**In re Joe CASTRO.**

**No. 11–07–00349–CV.**

Court of Appeals of Texas, Eastland.

Jan. 10, 2008.

Isaac M. Castro, Law Office of Isaac M. Castro, Hamlin, for relator.

David W. Thedford, Abilene, for real party in interest.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

In this mandamus proceeding, Joe Castro challenges the trial court's order granting Bulldog Constructors of Texas, Inc.'s motion to compel arbitration. Castro asserts (1) that Bulldog failed to establish that an agreement to arbitrate existed and (2) that, in the event an agreement to arbitrate existed, Bulldog waived its right to arbitrate. We conclude that Bulldog waived its right to arbitrate. We conditionally grant the petition for writ of mandamus.

*Background*

Castro and Bulldog entered into a contract relating to the construction of a building. Castro denies that the contract contained an arbitration provision. Bulldog contends that the contract contained the following provision:

> 9. It is expressly agreed between the parties that in the unlikely event of a dispute of any nature relating to this Contract arising between them, that it will be submitted to the American Arbitration Association for binding arbitration, under the Construction Industry Rules.

On March 26, 2004, Castro filed this cause against Bulldog in the trial court. Castro alleged breach of contract and other claims against Bulldog. On May 11, 2004, Bulldog filed its original answer in this cause. On February 8, 2005, Bulldog filed its first amended original answer. Bulldog included a plea in abatement in the amended answer. Bulldog asserted in the plea in abatement that the contract between Castro and it required Castro to submit his claims to the American Arbitration Association for binding arbitration. Bulldog requested that the trial court enter an order "abating this case until [Castro] has met all conditions precedent to proceeding with this suit and exhausted the remedies available to him pursuant to the terms of the Contract."

On May 11, 2005, the trial court conducted a hearing on Bulldog's plea in abatement. At the hearing, Castro and Bulldog agreed to mediate the case. In light of the parties' agreement to mediate the case, the trial court questioned whether Bulldog's plea in abatement could be carried along.

The following exchange occurred in response to the trial court's question:

[CASTRO'S COUNSEL]: We we—well, your Honor, if at some point in time we are going to come back and hear this, I would rather just go ahead and deal with it now, I mean we certainly can agree to mediate or the Court can order us to mediate. That is not a problem. But if we do not settle in mediation and we are going to come back later on, you know, on the arbitration issue, then I would rather it be settled today.

[THE COURT]: Well, do you want [to] hear the abatement issue today?

[CASTRO'S COUNSEL]: Well, you Honor, that is still going to be a live issue that is unresolved, I hope we do settle it in mediation but in the event that we do not, if we have to come back later on, you know to litigate this same issue, I would rather just get done with it now and just go on.

[THE COURT]: Yes, I will, that is fine.

[BULLDOG'S COUNSEL]: Judge, as far as [Bulldog] is concerned, this mediation order and agreement that we are making today, if that is the order of the Court, we are waiving arbitration language in the contract by agreeing to mediate. I see no reason to come back here later and then argue, no we did not arbitrate, when we have already mediated the case.

[CASTRO'S COUNSEL]: All right, in light of that stipulation, your Honor, we certainly then can pass on this. The Plea in Abatement then is a moot issue. Because it is waived, we agree to mediate . . .

The trial court did not announce a ruling on Bulldog's plea in abatement. The trial court entered an order referring this cause to mediation. In the order, the trial court did not refer to Bulldog's plea in abatement.

The parties mediated this cause but did not reach a settlement. The parties exchanged written discovery and took depositions. On December 11, 2006, Castro filed a motion to strike Bulldog's answer based, in part, on the contention that Bulldog had failed to timely respond to Castro's request for admissions, request for disclosure, and request for production of documents. On December 15, 2006, the trial court entered an order striking Bulldog's answer. On December 29, 2006, Bulldog filed a motion requesting the trial court to reinstate its answer. In the motion, Bulldog stated that "[it was] willing to go forward with the trial of this cause at the Court's discretion in the event the court will reinstate [Bulldog's] Answer and Amend its Order Deeming Facts admitted." On February 2, 2007, the trial court entered an order granting Bulldog's motion to reinstate its answer. On the same date, the trial court entered a scheduling order in this cause. In the scheduling order, the trial court set this cause for trial on August 14, 2007, and established deadlines for various matters. On March 13, 2007, Bulldog filed a motion for a docket control order. On May 8, 2007, the trial court considered Bulldog's request to extend the deadline for filing dispositive motions and pleadings. In response to Bulldog's request, the trial court extended the deadline for filing dispositive motions and pleadings to June 5, 2007.

The parties appeared for the scheduled jury trial on August 14, 2007. After the trial court seated the jury venire panel, Bulldog filed its motion to compel arbitration. The trial court heard Bulldog's motion outside of the presence of the jury venire panel. Castro testified that he signed a two-page contract. Castro identified Plaintiff's Exhibit No. 1 as the con-

tract that he signed. Plaintiff's Exhibit No. 1 did not contain an arbitration provision. Castro acknowledged during cross-examination that page two of the contract he signed included a provision that the terms and conditions printed on the back of the contract were, by agreement of the parties, incorporated into the contract. However, Castro testified that he did not recall seeing a third page of the contract. He also said that he did not take time to look at the contract. Gary Mack Jones signed the contract on behalf of Bulldog. He said that the contract he signed was a three-page document and that he signed it in the presence of Castro. Jones said that he reviewed all three pages of the contract with Castro. Bulldog introduced a copy of the three-page contract into evidence as Defendant's Exhibit No. 17. The third page of Defendant's Exhibit No. 17 was entitled "TERMS AND CONDITIONS" and included the above-quoted arbitration provision. Jones testified that Bulldog would not have entered into an agreement if the "terms and conditions" page had not been included in the contract.

The trial court took Bulldog's motion under advisement and excused the jury venire members. On October 9, 2007, the trial court entered its order granting Bulldog's motion to compel arbitration.

### Issues

■ Castro asserts that Bulldog failed to prove that an agreement to arbitrate existed. Alternatively, Castro asserts that, if the contract contained an arbitra-

tion provision as claimed by Bulldog, then Bulldog waived its right to arbitrate.[1]

### Agreement to Arbitrate

■ A party seeking to compel arbitration must first prove that an arbitration agreement exists and that the claims asserted fall within the scope of the agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999) (orig.proceeding); *Southwind Group, Inc. v. Landwehr*, 188 S.W.3d 730, 735 (Tex. App.-Eastland 2006, no pet.). Based on Jones's testimony (1) that he signed the three-page contract in Castro's presence and (2) that he reviewed all three pages of the contract with Castro, the trial court could have reasonably concluded that Castro and Bulldog entered into the three-page contract that included the arbitration provision. Based on the claims asserted by Castro in his petition, the trial court also could have reasonably concluded that Castro's claims fell within the scope of the arbitration provisions. Therefore, Bulldog presented sufficient evidence to prove that an agreement to arbitrate existed and that the claims asserted fell within the scope of the agreement.

### Waiver Defense to Arbitration

■ Because Bulldog carried its initial burden, the burden shifted to Castro to present evidence on his waiver defense to the arbitration agreement. *Southwind Group*, 188 S.W.3d at 735; *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The standard for

1. Neither Castro nor Bulldog addresses whether the Texas Arbitration Act or the Federal Arbitration Act would apply to such an arbitration provision. Jurisdiction in this cause does not depend on whether the TAA or the FAA applies. Castro seeks mandamus relief from the trial court's order granting Bulldog's motion to compel arbitration.

"[W]hen reviewing an order *granting* a motion to compel arbitration, mandamus is appropriate whether the FAA or the TAA applies." *In re Wolff*, 231 S.W.3d 466, 467 (Tex.App.-Dallas 2007, orig. proceeding). Thus, we conclude that we have mandamus jurisdiction over this proceeding.

determining waiver of the right to arbitration is the same under both the FAA and the TAA.[2] *Southwind Group,* 188 S.W.3d at 735; *Brown v. Anderson,* 102 S.W.3d 245, 250 (Tex.App.-Beaumont 2003, pet. denied); *Sedillo v. Campbell,* 5 S.W.3d 824, 826 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Whether a party has waived its right to arbitrate presents a question of law we review de novo. *Oakwood Mobile Homes,* 987 S.W.2d at 574; *Southwind Group,* 188 S.W.3d at 735; *Williams Indus.,* 110 S.W.3d at 136. Because public policy favors arbitration, there is a strong presumption against finding that a party has waived its right to arbitration; the burden to prove waiver is thus a heavy one. *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704–05 (Tex.1998) (orig.proceeding); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89 (Tex.1996) (orig.proceeding); *Southwind Group,* 188 S.W.3d at 735. Any doubts regarding waiver are resolved in favor of arbitration. *Bruce Terminix,* 988 S.W.2d at 705; *Southwind Group,* 188 S.W.3d at 735.

■ Waiver may be expressed or implied, but it must be intentional. *EZ Pawn,* 934 S.W.2d at 89; *Southwind Group,* 188 S.W.3d at 735. Whether waiver occurs depends on the individual facts and circumstances of each case. *Southwind Group,* 188 S.W.3d at 735; *Williams Indus.,* 110 S.W.3d at 135. A party does not waive arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice. *Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995); *Southwind Group,* 188 S.W.3d at 735. Waiver will be found only when (1) the party seeking arbitration has substantially invoked the judicial process and (2) the party opposing arbitration suffers actual prejudice as a result. *Bruce Terminix,* 988 S.W.2d at 704; *Southwind Group,* 188 S.W.3d at 735.

■ Substantially invoking the judicial process has been defined as taking specific and deliberate actions after a suit has been filed that are inconsistent with the right to arbitrate. *Williams Indus.,* 110 S.W.3d at 135; *Sedillo,* 5 S.W.3d at 827. A party does not substantially invoke the judicial process merely by participating in discovery. *Bruce Terminix,* 988 S.W.2d at 704; *In re Nasr,* 50 S.W.3d 23, 27 (Tex.App.-Beaumont 2001, orig. proceeding). However, pursuing extensive discovery may substantially invoke the judicial process. *Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518, 522 (Tex.App.-Austin 1998, no pet.).

■ Castro filed this cause on March 26, 2004. Bulldog waited until August 14, 2007—the date this cause was scheduled for jury trial—to file its motion to compel arbitration. During the approximate forty-one month period between March 26, 2004, and August 14, 2007, Bulldog took a number of deliberate and specific actions that were inconsistent with its right to arbitrate. At the hearing on May 11, 2005, Bulldog's counsel stated that Bulldog was waiving the arbitration language in the contract. On December 15, 2006, the trial court entered an order striking Bulldog's answer. In response to the trial court's order, Bulldog filed a motion to reinstate its answer. By filing the motion, Bulldog took an additional action that was inconsistent with its right to arbitrate. Specifically, Bulldog stated in the motion that it was willing to go forward with the trial of this cause if the trial court reinstated its answer and amended an earlier order deeming facts admitted. Bulldog took other actions that were inconsistent with its right to arbitrate. For example, on March

---

**2.** 9 U.S.C. §§ 1–16; Tex. Civ. Prac. & Rem.Code    Ann. ch. 171 (Vernon 2005).

13, 2007, Bulldog filed a motion requesting the trial court to enter a docket control order. Bulldog also requested the trial court to extend the deadline for filing dispositive motions and pleadings. In response to Bulldog's request, the trial court extended the deadline to June 5, 2007. The record shows that Bulldog served discovery requests on Castro and took Castro's deposition. Bulldog also filed a motion to compel Castro to fully respond to its requests for production and requests for disclosure. The trial court conducted a hearing on Bulldog's motion to compel and denied the motion. Bulldog's actions substantially invoked the judicial process.

A party opposing arbitration may establish that it suffered actual prejudice by showing that it incurred costs and fees due to the movant's actions or delay. *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 534 (Tex.App.-Houston [1st Dist.] 2007, no pet.); *Williams Indus.*, 110 S.W.3d at 135; *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 499–500 (Tex.App.-San Antonio 2000, orig. proceeding). Bulldog waited until the day of the jury trial to file its motion to compel arbitration. The record demonstrates that Castro and his counsel had to prepare for trial because of Bulldog's delay in filing the motion. At the hearing on Bulldog's motion, Castro's counsel testified regarding the costs and fees incurred by Castro as a result of Bulldog's delay. Castro's counsel said that he had spent "no less than twenty hours the last three days in preparation for this trial." He also said that his hourly rate was $200 and that, therefore, Castro had incurred, at the minimum, a cost of $4,000. The evidence established that Castro suffered actual prejudice as a result of Bulldog's actions or delay. Castro's counsel also filed an affidavit in response to Bulldog's motion to compel arbitration. In the affidavit, Castro's counsel stated that the

amount of $31,650 would be a reasonable attorney's fee for services rendered from May 11, 2005, until August 14, 2007, and that Castro had incurred expenses in the amount of $3,313.21 from May 11, 2005, until August 14, 2007. The affidavit of Castro's counsel provided additional evidence showing prejudice to Castro as a result of Bulldog's delay in seeking arbitration.

Bulldog waived its right to arbitration. Therefore, the trial court abused its discretion in granting Bulldog's motion to compel arbitration.

### This Court's Ruling

We conditionally grant the petition for writ of mandamus. The trial court is directed to vacate its "Order Granting Defendant's Motion to Compel Arbitration" and to enter a new order denying Bulldog's motion to compel arbitration. In the event the order is not vacated, a writ of mandamus will issue.